UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------×
JUN CHUL WHANG,

        *Plaintiff,*　　　　　　　　　　　　　　　　**19 CV 752**

  v.

GREENSPOON MARDER LLP,　　　　　　　　　　　**COMPLAINT**

        *Defendants.*
-----------------------------------------------------------------------×

      Plaintiff Jun Chul Whang, by his counsel, the Law Offices of Veronica S. Jung PLLC, alleges for his Complaint against Greenspoon Marder LLP, as follows:

## PRELIMINARY STATEMENT

    1.    Jun Chul Whang began working for Jacob, Medinger & Finnegan, LLP ("JMF") as an attorney in July 1992 and worked there until JMF merged with Greenspoon Marder LLP ("Greenspoon") effective April 2016.  Plaintiff Whang, a top performer at both JMF and Greenspoon, became a non-equity partner at JMF in 2004 and an equity partner in 2015. After Greenspoon acquired JMF Plaintiff Whang joined Greenspoon as a Shareholder.

    2.    Beginning during his time at JMF and continuing through the acquisition by Greenspoon, Plaintiff Whang, who is of Korean descent, experienced discrimination and disparate treatment on the basis of his race and national origin.  While at JMF, Plaintiff Whang was blocked from an equity position for over a decade and removed from a major case explicitly because of his race and national origin.

    3.    After the acquisition by Greenspoon, Plaintiff Whang worked with the same group of partners who had discriminated against him at JMF; their discriminatory actions persisted, ultimately leading to Plaintiff Whang's termination.

1

4. Greenspoon violated federal, state, and city law by discriminating against Plaintiff Whang and its actions caused him significant harm. Plaintiff Whang seeks damages and costs against Defendant Greenspoon for discriminating against him on the basis of his race and national origin in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981") and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq* ("NYCHRL").

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under § 1981.

6. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over Plaintiff's claims, as Plaintiff is a citizen of the State of New York, and Defendant is a corporation organized under the laws of the State of Florida with its headquarters located in the State of Florida.

7. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYCHRL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

9. Plaintiff respectfully requests a trial by jury

**PARTIES**

10.     Plaintiff Whang, at all times relevant hereto, was and is a resident of New York County in the State of New York.

11.     Upon information and belief, at all times relevant hereto, Defendant Greenspoon was and is a corporation organized under the laws of the State of Florida with its principal place of business located at 200 East Broward Boulevard, Fort Lauderdale, FL 33301.

**STATEMENT OF FACTS**

12.     Plaintiff Whang is a fifty-four year old Asian-American man of Korean descent, and a citizen of the United States.

13.     In and around July 1992, Plaintiff Whang joined JMF as an Attorney.

14.     Throughout his tenure with JMF, Plaintiff Whang focused on representing JMF's tobacco clients, representing JMF's clients in jurisdictions around the world.

15.     Plaintiff Whang always fulfilled or exceeded what was expected of him, creating significant value for the firm and facilitating its expansion, and his billable hours matched and/or exceeded those of his colleagues.

16.     In particular, Plaintiff Whang distinguished himself at the firm by locating and utilizing a range of medical and scientific experts to work with the firm, allowing JMF to improve and expand its client services.

17.     Plaintiff Whang also contributed to the growth of JMF by bringing in both new clients and experienced counsel.

18.     Plaintiff Whang attracted several attorneys of Korean descent to the firm, who enabled JMF to expand its practice areas into high-end corporate matters.

19. Plaintiff Whang and his Korean-American colleagues brought a range of new clients to the firm, including intellectual property and patent matters, as well as several Korean-based companies, many of whom are still engaged with Greenspoon.

20. Even though Plaintiff Whang's heritage was a boon to JMF, Plaintiff Whang still faced discrimination at the firm.

21. For example, shortly after Plaintiff Whang became a partner at the firm, he was removed as a possible lead attorney for a case in Poland at the instruction of Polish counsel, based solely on his ethnicity.

22. JMF told Plaintiff Whang that the firm's Polish local counsel had advised against having a lead attorney of Asian descent on the case.

23. While JMF acknowledged that this was offensive and discriminatory, nothing was done to stop the removal.

24. Plaintiff Whang successfully represented JMF's clients through litigation, equaled or exceeded his peers in billable hours, and helped grow the firm. Despite this, JMF did not make Plaintiff Whang a non-equity partner until 2004, a dozen years after he joined the firm, and did not promote him to equity status until 2015, more than a decade later.

25. JMF typically promoted non-equity partners to equity status after approximately five years of partnership.

26. JMF maintained a policy whereby a non-equity partner could only become an equity partner by the unanimous consent of the existing equity partners. All JMF's equity partners were White.

27. For over a decade, certain White equity partners refused to vote for Plaintiff Whang.

28. During this time Plaintiff Whang brought significant revenue to JMF, but, as a non-equity partner, Plaintiff Whang did not receive a share of the significant profits that JMF earned.

29. When JMF promoted White non-equity partners to equity partner, it did so after only one to approximately five years service as non-equity partners.

30. JMF also allowed existing White partners to remain on despite those partners doing little to no work for several years.

31. JMF did not promote Plaintiff Whang until 2015. JMF's motivation when it finally voted to promote Plaintiff Whang was not reward him for decades of service by allowing him to share in JMF's profits, but rather to add Plaintiff Whang as an equity partner so that he could defray the firm's potential liabilities.

32. Around this time JMF began seeking possible mergers with other firms.

33. In 2016, JMF merged with Greenspoon. Mr. Whang, as well as four White equity partners, namely, Tim Finnegan, Arthur Hoffmann, Keelin Kavanagh, and David Jaroslaw, joined Greenspoon as a team.

34. These five partners remained as a practice group within Greenspoon and continued to service Imperial Tobacco, a company which had been JMF's primary client.

35. The other four equity partners received a payment representing a return on equity at the time of the merger; Plaintiff Whang, as a new equity partner, did not.

36. All five incoming equity partners were to be viewed as equals at Greenspoon; all five received the same salary of $300,000 upon joining the firm.

37. Plaintiff Whang remained highly productive during his tenure at Greenspoon, attracting potential clients and working to build out his practice group's capabilities in order to further develop additional business.

38. By 2018 Plaintiff Whang had several new potential clients with significant matters which were to be brought into the firm.

39. In January of 2018, representatives of Imperial Tobacco—JMF's largest client before the merger—indicated that they intended to increase the legal budget dedicated to Plaintiff Whang's practice group.

40. Greenspoon expected to commence work on several new projects for Imperial Tobacco in late 2018 and Plaintiff Whang, given his experience in the specific subject areas and his relevant contacts, was expected to take a leadership role in upcoming projects.

41. However, on May 21, 2018, Greenspoon suddenly informed Plaintiff Whang that he was being terminated and that his last day of employment would be May 31, 2018.

42. Tim Finnegan, Plaintiff Whang's senior partner who came over with him from JMF, informed Plaintiff Whang of the decision and claimed that Greenspoon's executive committee had made a unilateral decision in order to cut costs.

43. Upon information and belief, Greenspoon's decision to terminate Whang was not a unilateral one based on neutral business needs, but rather, one involving a conscious, measured decision to terminate Whang versus the White attorneys/partners in his practice group.

44. Greenspoon's executive committee operated out of its Florida offices. Upon information and belief, the executive committee would have needed input from the New York team in order to determine which, if any, partners to terminate.

45. Specifically, given the significant increase in workload for Plaintiff Whang's team on Imperial Tobacco matters, it is implausible that Greenspoon's executive committee would make decisions about terminating senior lawyers on Plaintiff Whang's team without discussing the matter with Plaintiff Whang's JMF colleagues.

46. As set forth elsewhere in this complaint, the Firm had no legitimate business reason to terminate Plaintiff Whang, who was a highly productive member of the Firm.

47. Moreover, the Firm afforded Plaintiff Whang's White counterpart(s) who were less or non-productive, and who generated far less business, with transition opportunities not granted to Plaintiff Whang.

48. Greenspoon's justification of Plaintiff Whang's termination as a cost-cutting measure does not accurately reflect the economics of the firm.

49. By terminating Plaintiff Whang, Greenspoon lost a significant amount of business: for example, two Korean-American clients who had been arranging retainers with Greenspoon elected not to engage with the firm after Plaintiff Whang's termination, despite Plaintiff Whang's encouraging them to stay with Greenspoon.

50. Plaintiff Whang was also to play a major role in the expected Imperial Tobacco matters, bringing further value to the firm.

51. Greenspoon's purported explanation for Plaintiff Whang's termination is belied further by the fact that, of all five former JMF partners, Plaintiff Whang was the partner who most embraced Greenspoon's strategic business direction to "crosspollinate" with Greenspoon's other offices and practice groups by bringing prospective clients to Greenspoon attorneys across practice areas.

52. At the same time that Greenspoon abruptly terminated Plaintiff Whang, it offered Mr. Finnegan, who already was planning on retiring, an extended role with the firm in an "of counsel" position.

53. Mr. Finnegan was not engaged in business development activities for Greenspoon and had a significantly smaller caseload than Plaintiff Whang.

54. The difference in Greenspoon's handling of Plaintiff Whang compared to his White colleagues is striking.

55. While Plaintiff Whang was abruptly terminated, Mr. Finnegan was allowed to stay on for at least several more months with pay and benefits.

56. None of the White partners who arrived with Plaintiff Whang from JMF were terminated.

57. Greenspoon never offered Plaintiff Whang the option to continue on at the firm in an "of counsel" position.

58. In short, Greenspoon treated Plaintiff Whang less well than his White colleagues. Plaintiff Whang was equally or more valuable to the firm, yet he was the only one abruptly terminated.

59. Greenspoon's discriminatory actions caused Plaintiff Whang significant harm, including lost wages and benefits, damage to his professional reputation, and significant emotional distress.

60. By allowing Plaintiff Whang only ten days' notice in advance of his termination, Greenspoon seriously hampered Plaintiff Whang's ability to find a new position.

61. Plaintiff Whang is now a seasoned, twenty-eight year veteran litigation attorney with no job and diminished prospects because of Greenspoon's actions.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Race Discrimination in Violation of § 1981

62. Plaintiff Whang hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 61 with the same force as though separately alleged herein.

63. Section 1981 prohibits discrimination in contract, such as employment, on the basis of race.

64. Greenspoon discriminated against Plaintiff Whang on the basis of his race by taking adverse employment action against him, up to and including termination.

65. As such, Greenspoon has violated Section 1981.

66. As a direct and proximate consequence of Greenspoon's discrimination, Plaintiff Whang has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

67. Greenspoon's discriminatory treatment of Plaintiff Whang was willful and/or in reckless disregard of Plaintiff Whang's protected rights.  Accordingly, Plaintiff Whang is entitled to an award of punitive damages against Greenspoon.

### SECOND CAUSE OF ACTION
### Race and National Origin Discrimination in Violation of the NYCHRL

68. Plaintiff Whang hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69. The NYCHRL prohibits an employer from discriminating against an employee in terms, conditions, or privileges of employment on the basis of, *inter alia*, their race, gender, national origin, and disability.

70. Greenspoon is an employer as contemplated by NYCHRL, and Plaintiff Whang is an employee as contemplated by the NYCHRL.

71. Greenspoon discriminated against Plaintiff Whang on the basis of his race and national origin, by taking adverse employment action against him, up to and including terminating his employment.

72. As such, Greenspoon has violated the NYCHRL.

73. As a direct and proximate consequence of Greenspoon's discrimination, Plaintiff Whang has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

74. Greenspoon's discriminatory treatment of Plaintiff Whang was willful and/or in reckless disregard of Plaintiff Whang's protected rights.  Accordingly, Plaintiff Whang is entitled to an award of punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial; and

C. For such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          January 25, 2019

                                        LAW OFFICES OF VERONICA S. JUNG, PLLC

                                        By:    /s/ Veronica S. Jung
                                               VERONICA S. JUNG (VJ-6211)
                                               OWEN H. LAIRD (WL-6994)
                                               200 Park Avenue, Suite 1700
                                               New York, NY 10166
                                               Telephone: (212) 897-1981
                                               Facsimile: (212) 682-0278

                                        *Attorneys for Plaintiff*